# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| SCOTT ALAN GLUCK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:21-cv-00478** |
| | ) | **Judge Richardson / Frensley** |
| ANDREW M. SAUL, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 21. Plaintiff has filed an accompanying Memorandum. Docket No. 21-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 24. Plaintiff has filed a Reply. Docket No. 25.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be **DENIED**, and that the decision of the Commissioner be **AFFIRMED**.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on July 3, 2018, alleging that he had been disabled since May 7, 2018, due to traumatic brain injury ("TBI") and

1

diabetes. *See, e.g.,* Docket No. 16, Attachment ("TR"), pp. 177-78, 199. Plaintiff's application

was denied initially (TR 68) and upon reconsideration (TR 87). Plaintiff subsequently requested

(TR 103-04) and received (TR 36-54) a hearing. Plaintiff's hearing was conducted on April 15,

2020, by Administrative Law Judge ("ALJ") Michelle Thompson. TR 36. Plaintiff and vocational

expert ("VE"), Anne Darnell, appeared and testified.[1] TR 40-53, 278. After the hearing, the ALJ

sent a Request for Vocational Expert Interrogatory to an additional VE, Lisa Courtney, after

attempts to send the same to Ms. Darnell failed. TR 15, 286-90. Ms. Courtney replied to the

interrogatory from the ALJ on May 7, 2020. TR 293-96. Plaintiff was informed of Ms. Courtney's

Interrogatory and the ALJ's proposal to enter it as evidence into the record on May 13, 2020, along

with his rights to submit written comments, a written statement, written questions, submit

additional evidence, or request a supplemental hearing within 10 days of receiving notice. TR 297-

98. Plaintiff did not do any of the foregoing. TR 16.

On July 1, 2020, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations. TR 12-31.

Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023 (Ex. 11D).
>
> 2. The claimant has not engaged in substantial gainful activity since May 7, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: traumatic brain injury (TBI); diabetes; coronary artery disease (CAD); hyperlipidemia; hypertension; bursitis;

---

[1] The transcript of the April 15, 2020 hearing names the VE as "Ms. Danielle," but no such VE is mentioned elsewhere in the record and the only curriculum vitae apart from Lisa Courtney's is one belonging to Anne Darnell. TR 278-85. The Court will thus presume "Ms. Danielle" is an error in the hearing transcript and that Anne Darnell was the testifying VE.

2

obstructive sleep apnea (OSA); diverticulosis; degenerative joint disease – shoulder, bilateral knees and hips; headaches; and obesity (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 505.1526).

5.      After careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can frequently reach overhead with right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolding; and can occasionally stoop, kneel, crouch and crawl. He must also avoid concentrated exposure to hazards such as machinery, heights, etc.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on February 4, 1971 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimaint's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from May 7, 2018, through the date of this decision (20 CFR 404.1520(g)).

TR 18, 28-30.

On July 15, 2020, Plaintiff timely filed a request for review of the hearing decision. TR 148-49. On April 14, 2021, the Appeals Council issued a letter declining to review the case (TR 1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical

experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.     Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

6

to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and

7

nonsevere.  *See* 42 U.S.C.§ 423(d)(2)(B).

## C.  Plaintiff's Statement of Errors

Plaintiff contends that the ALJ (1) failed to accord proper weight to the opinion of Plaintiff's treating physician Ben H. Rowan III, M.D., in determining Plaintiff's RFC and (2) failed to incorporate mental limitations into her hypothetical posed to the VE.  Docket No. 21-1, p. 9-18. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be vacated, and the matter remanded.  Docket No. 21-1, p. 19.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff argues the ALJ failed to accord proper weight to the opinion of Dr. Ben H. Rowan III, M.D., in determining Plaintiff's RFC and provides three general grounds for the ALJ's failure.

8

Plaintiff first asserts the ALJ's rejection of Dr. Rowan's opinion due to its check-box format lacks merit. Docket No. 21-1, p. 11-12. Although the Treating Source Statement ("TSS") contains almost entirely medical conclusions without objective medical support, Plaintiff argues that Dr. Rowan's treatment notes throughout the record may be read as support for the conclusions contained in the TSS. *Id.* Plaintiff additionally maintains that the ALJ does not form a "logical bridge" between the medical evidence she cites and her rejection of the opinion. Docket No. 21-1, p. 12-15. Specifically, Plaintiff claims the ALJ did not adequately explain her conclusion that Plaintiff's activities of daily living ("ADLs"), progress notes referring to Plaintiff's conditions as "stable" and normal physical findings at checkups contradict Dr. Rowan's opinion. *Id.* Finally, Plaintiff argues the ALJ improperly relied on Plaintiff's conservative treatment regime as evidence contradicting Dr. Rowan's opinion that Plaintiff has severe limitations. *Id.* at 15. Plaintiff asserts that under *Meece*, the ALJ lacked sufficient expertise to use her conclusion that Plaintiff's treatment did not match that of a patient with severe impairment as evidence to discredit Dr. Rowan's opinion of the severity of Plaintiff's impairment. *Id.*, citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006).

Defendant responds that the ALJ properly considered Dr. Rowan's opinion and found it unpersuasive as both unsupported by and inconsistent with other evidence in the record. Docket No. 24, p. 5-6. Defendant argues that the ALJ took both the statements within the TSS and Dr. Rowan's own progress notes into consideration in finding the TSS unpersuasive, which is all the Regulations require. *Id.* at 5. Additionally, Defendant asserts that Plaintiff's qualms with the ALJ's conclusion merely "quibble[] with some of the ALJ's particular explanations of her determination while losing sight of the overall analysis." *Id.* at 7.

Plaintiff replies that Defendant failed to adequately respond to the substantive arguments

9

raised by Plaintiff and that the ALJ's errors are sufficient to for the Court to vacate and remand. Docket No. 25.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017, and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his application after March 27, 2017. TR 177. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (*paragraph (c)(1)* of this section and consistency (*paragraph (c)(2)* . . . .
>
> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

(1)  **Source-level articulation.**  Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.  Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in *paragraphs (c)(1) through (c)(5)* of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2)  **Most important factors.**  The factors of supportability (*paragraph (c)(1)* of this section) and consistency (*paragraph (c)(2)* of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.  Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in *paragraphs (c)(3) through (c)(5)* of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3)  **Equally persuasive medical opinions or prior administrative medical findings about the same issue.**  When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (*paragraph (c)(1)* of this section) and consistent with the record (*paragraph (c)(2)* of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in *paragraphs (c)(3) through (c)(5)* of this section for those medical opinions or prior administrative medical findings in your determination or decision.

(c) **Factors.**  We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case;

(1)  **Supportability.**  The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

11

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in *paragraphs (c)(3)(i) through (v)* of this section.

> **(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in *paragraphs (a)-(c)* in this section.

20 C.F.R. § 404.1520c.

Dr. Rowan began treating Plaintiff on May 18, 2017. TR 424. On August 13, 2019, Dr. Rowan provided a TSS which, in summary, found the following:

1. Plaintiff's impairment is "frequent disabling headaches" that cause severe and "intermittent" pain.

2. Plaintiff would miss three days per month out of a forty-hour work week due to his condition.

3. On a full-time, sustained basis of eight hours a day and five days a week, Plaintiff could frequently sit, occasionally stand, walk and climb, and infrequently stoop due to "[second degree] knee pain".

4. On an average workday, Plaintiff could frequently lift or carry up to ten pounds and occasionally carry eleven or more.

5. On a full-time basis, Plaintiff could frequently use his hands for fine and gross manipulation and raise both arms over his shoulder.

6. Plaintiff has reasonable need to lie down due to pain for between forty-five minutes to one hour, twice per week.

7. In an average workday, Plaintiff would be off task due to his condition twenty percent of the time.

13

8. Plaintiff can sustain ordinary routine but is occasionally precluded from understanding very short, simple instructions; understanding and remembering detailed instructions; performing activities with a schedule while maintaining regular attendance; working in coordination with or proximity to others without distraction; adapting to ordinary stress or changes in the workplace; and maintaining attention and concentration for extended periods of time.

9. Plaintiff's sleep is adversely affected by his condition.

10. Plaintiff must take unscheduled break periods during an eight-hour workday beyond normal breaks.

TR 476-78.

When discussing Dr. Rowan's letter, the ALJ stated:

In a Treating Source Statement (TSS) dated August 13, 2019, the claimant['s treating physician Dr. Rowan suggested the claimant essentially could not do even a full range of sedentary work (Ex. 4F). Per the TSS, the claimant reportedly could lift and carry at the light exertion level but could only frequently sit, occasionally stand and climb, and infrequently stoop. In addition, Dr. Rowan also indicated in his opinion the claimant would miss three workdays per month due to frequent disabling headaches, be off task 20 percent of a normal workday due to pain, require unscheduled breaks during a normal workday, and must lie down for 45 minutes to an hour twice per week. Dr. Rowan further check marked boxes indicating the claimant['s sleep was adversely affected and there was lapse in memory and/or concentration.

TR 25.

Ultimately, the ALJ discounted Dr. Rowan's opinion, stating:

After careful study, the undersigned found the TSS (Ex. 4F) ultimately unpersuasive. Although Dr. Rowan is the claimant's PCP during the period in question and treated the claimant with some frequency prior to the alleged onset date through 2020 (Exs. 1F-2F, 4F-5F, and 10F), the record as a whole clearly does not support the levels of limitations he assesses except for lift and carry at the light exertion level.

14

> Accordingly, in finding the claimant is limited to a range of light work with the additional postural, environmental and manipulative limitations outlined in the above residual functional capacity, the undersigned found the opinions of Dr. Rowan ultimately unpersuasive.

TR 25-26.

As the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source.  20 CFR § 404.1520c(a).  In discounting Dr. Rowan's opinion, the ALJ discussed the relevant factors, set forth above.  *See* 20 CFR § 404.1520c(c)(1) – (c)(5).  Specifically, the ALJ found that Dr. Rowan's opinion was not supported by his own treatment records or the objective medical evidence and was inconsistent with Plaintiff's ADLs and treatment regimen.  TR 25.  The ALJ explained:

> For example, in support for the limitations he suggests in the TSS at 4F, Dr. Rowan merely notes the claimant contends with "Frequent disabling headaches" that cause severe intermittent pain. (Ex. 4F, p. 1). Otherwise, the TSS consists almost entirely of check-marked boxes absent explanation. In addition, the limitations Dr. Rowan suggests are not consistent with the ADL[s] the claimant has been able to engage in during the relevant period at issue, including shopping in stores, going to the mall and movie theater, helping take care of grandchildren and pet dog, using Facebook and phone, and doing certain household chores (Exs. 4E and 8E-9E). Furthermore, the TSS is not consistent with or supported by the treatment records, including his own progress notes, which in addition to reflecting relatively conservative treatment during the period in question, also reflect various normal physical exam findings. As described above, this more recently includes but is not limited to normal muscle strength in upper and lower extremities, intact sensorium, orientation, normal heart rate and rhythm, normal work of breathing on room air, normal attention span and concentration, normal recent and remote memory, and no edema (Exs. 1F, pp. 17-21, 40, 53-54, 56-59 and 2F, pp. 25, 33-36, 39-42). Moreover, the bulk of the claimant's treatment with Dr. Rowan in the record consists of routine follow up visits and during these follow up visits Dr. Rowan repeatedly notes a number of the claimant's health conditions for

15

> which he is following up on are stable, such as CAD, and/or well
> controlled, such as hypertension (Exs. 1F-2F, 4F-5F and 10F). The
> record further indicates the claimant is not entirely compliant with
> his relatively conservative treatment regimen despite that his DM II
> at least somewhat improves with medication (see Exs. 1F, pp. 25,
> 27, 97-98, and 2F, p. 9).

TR 25.

As demonstrated above, the ALJ's decision is replete with medical assessments and doctors' evaluations, all of which were properly considered by the ALJ.

Plaintiff argues that the ALJ should not have discounted Dr. Rowan's TSS due to its lack of explanation in the check-box format and that she should have read outside the "four corners of the opinion" to find support for Dr. Rowan's conclusions. Docket No. 21-1, p. 12. As shown above, the ALJ clearly stated she did consider Dr. Rowan's "own progress notes" in evaluating his opinion. She found them to be inconsistent with the TSS and provided citations to those inconsistencies. TR 25. Plaintiff's argument fails.

Plaintiff also contends that the ALJ failed to explain how Plaintiff's ADLs translate to an ability to perform full-time work and how various physical examinations with unremarkable or stable findings necessarily undermine Dr. Rowan's opinion. While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should still consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g.*, *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992). Additionally, Plaintiff fails to cite any support for the notion that the ALJ must specifically and comprehensively articulate exactly how the Plaintiff's ADLs lead her to reject Dr. Rowan's opinion. The Regulations do not so require. Rather, the Regulations simply require that the ALJ

16

state "the findings of fact and the reasons for the decision." 20 CFR § 416.1453(a). As the Sixth Circuit has noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

Plaintiff's final quarrel with the ALJ's finding is the ALJ's mention of Plaintiff's "conservative treatment" as evidence that Dr. Rowan's TSS opinions are inconsistent. Docket No. 21-1, p. 15. Plaintiff argues that under *Meece*, "while the ALJ may have prescribed different medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ and is not a legitimate basis for an adverse credibility determination." *Id.*, *quoting* 192 F. App'x at 465 (internal quotation marks omitted). This argument fails for two reasons.

First, *Meece* was decided in 2006, meaning rules governing cases filed before March 27, 2017, applied. 20 CFR § 404.1527; 192 F. App'x at 456. Those rules obligated ALJs to afford controlling weight to medical opinions from sources with a treatment relationship with the patient when the opinion was supported by and consistent with medical evidence in the record. 20 CFR § 404.1527(c)(2). Under the rules for cases filed after March 27, 2017, supportability and consistency of a medical opinion are now the most important factors for consideration, while a treatment relationship is of lesser importance and will never mandate specific evidentiary weight. 20 CFR §§ 404.1520c(a), (b)(2). It remains unclear whether the Court in *Meece* would come to the same conclusion if that case was governed by the rules that now apply. Therefore, the Court is reluctant to find *Meece* controlling on this issue.

Second, Plaintiff mischaracterized the holding from *Meece*. Docket No. 21-1, p. 15. Although the Court did state "[w]hile the ALJ may have prescribed a different medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ and is not a legitimate basis for an adverse credibility determination," Plaintiff excluded relevant context.

17

Specifically, this statement was made in reference to the ALJ discounting the claimant's subjective complaints about the extent of his pain. 192 F. App'x at 464. The Court accordingly found that the claimant's physician's failure to prescribe stronger treatment could not undermine the *claimant's* credibility with regards to pain. *Id.* at 465. In the present case, the ALJ found the Plaintiff's physician's failure to prescribe stronger treatment undermined the *physician's* credibility. TR 25. This distinction is crucial. In the case at bar, the ALJ has not discredited Plaintiff's claims about his own disability because of the physician's opinions. Rather, the ALJ has discredited Dr. Rowan's claims about Plaintiff's disability because Dr. Rowan's treatment decisions contradict his own conclusions. The ALJ may properly weigh Dr. Rowan's conclusions using this evidence.

The ALJ also considered Dr. Rowan's "relationship with the claimant" in addition to consistency and supportability. 20 CFR § 404.1520c(c)(3). The ALJ recounted the duration of the treating relationship, the frequency of Plaintiff's visits to Dr. Rowan, and Dr. Rowan's position as Plaintiff's primary care physician. *See* TR 21-26. The ALJ fulfilled her duty under the new regulations by specifically articulating her findings of fact and, using the information in the record, provided the rationale for her decision. The ALJ therefore properly evaluated the opinion of Dr. Rowan; Plaintiff's argument fails.

Plaintiff's brief includes reasons why Plaintiff believes Dr. Rowan's opinions contained within the TSS are credible as supported by medical evidence in the record. However, as stated above, the reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached.

18

*Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  While it is true that some of the testimony and evidence supports Dr. Rowan's opinions, it is also true that much of the evidence supports the ALJ's determination that Dr. Rowan's conclusions in his TSS should not be afforded great weight.  TR 21-28.  Because substantial evidence supports the ALJ's determination that Dr. Rowan's conclusions contained in the TSS are unpersuasive, the ALJ's decision must stand.

## 2.  Hypothetical Questions and Reliance on the VE's Testimony Related Thereto

Plaintiff argues that the ALJ's hypothetical questions posed to VE Lisa Courtney did not accurately reflect his exertional and nonexertional limitations, and therefore that the ALJ erred in relying upon the VE's testimony to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform.  Docket No. 21-1, p. 17-18.  Specifically, Plaintiff argues that the ALJ did not ask the VE a hypothetical that included Dr. Rowan's opinion that Plaintiff is occasionally precluded from understanding very short, simple instructions; understanding and remembering detailed instructions; performing activities with a schedule while maintaining regular attendance; working in coordination with or proximity to others without distraction; adapting to ordinary stress or changes in the workplace; and maintaining attention and concentration for extended periods of time.  *Id.*  Plaintiff adds that "state agency psychological consultants found Plaintiff had moderate limitations in understanding, remembering, or applying information, as well as concentration, persistence, or maintaining pace," which were also not included in the ALJ's hypothetical.  *Id.* at 18.

Defendant responds that the ALJ considered both the opinion of Dr. Rowan and state agency psychologists Karen Lawrence, Ph.D., and Sandip Sen, M.D., but ultimately determined that Dr. Thelma Foley, Ed.D.'s consultive psychological examination deserved the most weight.

19

Docket No. 24, p. 9-10. Defendant argues that the ALJ's decision to exclude mental limitations from her residual functional capacity determination resulted from Dr. Foley's conclusion that Plaintiff lacked significant mental health problems which would limit his vocational functioning. *Id.* Thus, Defendant avers, the hypothetical question posed to the VE was an accurate reflection of Plaintiff's credible limitations and relying on the VE's testimony was not error. *Id.* In the alternative, Defendant argues that Ms. Courtney stated someone with Plaintiff's vocational profile and residual functional capacity could work as a garment sorter, which involves Level 2 reasoning, or "detailed but uninvolved written or oral instructions." *Id.*; TR 295. Defendant concludes therefore, even if Plaintiff's residual functional capacity does include mental limitations, at least one of the occupations proposed by the VE would account for them. Docket No. 24, p. 10.

Plaintiff replies reiterating that Ms. Courtney's response fails to account for the mental limitations found by Dr. Rowan, Dr. Lawrence and Dr. Sen. Docket No. 25, p. 3. Accordingly, Plaintiff argues that the ALJ lacked substantial evidence for finding Plaintiff can perform jobs that exist in significant numbers in the national economy. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon*, 923 F.2d at 1181. The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid,

"expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ in the instant action posed two hypothetical questions to Ms. Darnell, the VE called to testify. TR 52. The ALJ first queried:

> Q:     In hypothetical number one, please consider someone of Mr. Gluck's age, education and work experience who is at the light exertional… Can frequently reach overhead with the right upper extremity. Can occasionally climb ramps and stairs, never ladders, ropes or scaffolds. Can occasionally stoop, kneel, crouch and crawl. Must avoid…exposure to…machinery, heights, et cetera. Under this hypothetical, would any of the past work be available?
>
> …
>
> A:     Yes, ma'am. Based on the hypothetical the Medical Supply Worker would still remain.

TR 52.

The ALJ then modified the hypothetical question and queried:

> Q:     And in hypothetical number two, please assume that the same person has the same limitations as in hypothetical number one but referring to Exhibit 4F, would have to miss work more than [three days] a month. Would there be any work at all?
>
> A:     …No, ma'am. That would preclude any jobs.

*Id.*

After the Plaintiff's hearing, the ALJ also posed a hypothetical question to Ms. Courtney

in a Vocational Interrogatory. TR 286, 293-96. The hypothetical asked:

> Q: Assume a hypothetical individual who was born on February 4, 1971, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6. Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently reach overhead with right upper extremity; occasionally climb ramps and stairs; never climb ladder, ropes or scaffolding; can occasionally stoop, kneel, crouch and crawl. She must also avoid concentrated exposure to hazards such as machinery, heights, etc. Could the individual described…perform any of the claimant's past jobs as actually performed by the claimant or as generally performed in the national economy?
>
> A: Yes. Job #2 Customer Service Representative. SVP = 5 as generally performed in national [economy]. Job #1 Central Supply Worker. Light SVP = 4 as generally performed in the national [economy]. Both jobs were medium per the way the claimant stated [lift and carry] up to 50 [pounds and] 40 [pounds]. Job #3 is ruled out due to medium in exertion in DOT/Heavy as performed.

TR 294.

The interrogatory then asked:

> Q: Could the individual described [above] perform any unskilled, light occupations with jobs that exist in the national economy?
>
> A: Yes. Cashier II 211.462-010. Light SVP = 2 (unskilled). National economy: 200,000. Garment Sorter 222.687-014. Light SVP = 2 (unskilled). National [economy] 70,000. Mail Clerk 209.687-026. Light SVP = 2 (unskilled). National [economy]: 80,000.

TR 295.

As can be seen, the ALJ posed hypothetical questions to the VE, each incorporating

22

different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. After the Plaintiff's hearing where Ms. Darnell testified, the ALJ properly evaluated the evidence, found that Plaintiff's allegations about mental limitations were not fully credible, and ultimately determined that Plaintiff retained the following residual functional capacity which she used to determine the hypothetical posed to Ms. Courtney:

> After careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can frequently reach overhead with right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolding; and can occasionally stoop, kneel, crouch and crawl. He must also avoid concentrated exposure to hazards such as machinery, heights, etc.

TR 18.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical question posed to the VE by the ALJ accurately reflected the limitations she found credible, consistent with, and supported by, the evidence of record. *See* TR 19, 28; *see also* 60, 64-65, 77, 82-83, 444-54, 472-75, 477. Although Plaintiff contends the hypothetical was insufficient for lack of consideration of Plaintiff's alleged mental impairments, Plaintiff fails to cite any authority for the proposition that a hypothetical posed to a VE must include all potential limitations contained within the medical record. Plaintiff stretches *Varley* and the case it quotes, *Podedworny v. Harris*, too far by claiming they hold that an ALJ

23

must include all limitations claimed by Plaintiff, or even all limitations the medical record *could* support. Both cases only support the proposition that the ALJ's hypothetical must include all those the ALJ finds credible. *Varley*, 820 F.2d at 779; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

Because the hypothetical question upon which the ALJ ultimately based her decision accurately represented the limitations the ALJ found credible, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

24

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**